**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ESTATE OF MARK ROSADO ROSARIO,
*et al.*,

     **Plaintiffs,**

          **v.**

FALKEN TIRE CORP., *et al.*,

     **Defendants.**

**Civil No.** 14-1505 (FAB)

**OPINION AND ORDER**[1]

BESOSA, District Judge.

Before the Court is defendant P.T. Sumi Rubber Indonesia's motion to dismiss (Docket No. 37) the Estate of Mark J. Rosado Rosario's second amended complaint (Docket No. 9) which the Estate of Mark J. Rosado Rosario opposes (Docket No. 45).  For the reasons discussed below, the motion to dismiss is **GRANTED**.  The second amended complaint as to defendant P.T. Sumi Rubber Indonesia (Docket No. 9) is **DISMISSED**.

---

[1] Rachel L. Hampton, a second-year student at the University of Michigan Law School, assisted in the preparation of Opinion and Order.

## I.   BACKGROUND[2]

On July 29, 2013, in Rio Grande, Puerto Rico, Mark J. Rosado Rosario ("Rosado") was driving in a Toyota Camry equipped with Falken Tires when the tires failed, causing him to crash into a pole.  (Docket No. 9 at ¶¶ 24, 27.)  Rosado had purchased the faulty tires from a Pep Boys store located in Rio Grande, Puerto Rico.  (Docket No. 45 at ¶ 17.)  As a result of the accident, Rosado was killed.  Id. at ¶ 18.

On June 25, 2014, almost one year after the accident, Rosado's minor children, MJRC and KNRC, and his wife Milagros Carrasquillo Santiago ("Carrasquillo"), constituting the Estate of Mark J. Rosado Rosario ("Estate of Rosado") (collectively, "plaintiffs"), filed this lawsuit pursuant to article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141, against Falken Tire Corporation ("FTC"), Sumitomo Rubber Industries, Ltd. ("Sumitomo"), Dunlop Falken Tires, Ltd. ("Dunlop"), and other unnamed defendants (collectively, "defendants").  (Docket No. 1.)

On July 2, 2014, plaintiffs filed an amended complaint,[3] (Docket No. 6), and on August 6, 2014, they filed a second amended

---

[2] The Court sketches a general factual composite at the outset and incorporates additional facts as is necessary.

[3] The amended complaint modified the original complaint to add a security restriction to the minors' names.  (Docket No. 6.)

complaint, in which they added as a defendant P.T. Sumi Rubber Indonesia ("P.T. Sumi"), an entity organized under the laws of Indonesia with its principle place of business and "nerve center" located in Indonesia (Docket No. 9 at pp. 16-17).   Plaintiffs allege that P.T. Sumi "researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the Falken Tires" that caused Rosado's fatal crash.   (Docket No. 9 at pp. 16-17).

On November 12, 2014, P.T. Sumi moved for dismissal on two grounds: (1) statute of limitations, and (2) lack of personal jurisdiction.   (Docket No. 37.)   On December 23, 2014, plaintiffs opposed the motion to dismiss.   (Docket No. 45.)   On January 9, 2015, P.T. Sumi replied to plaintiffs' opposition (Docket No. 48), to which the plaintiffs filed a sur-reply on January 13, 2015 (Docket No. 51).

## II.  LEGAL STANDARD

Defendant P.T. Sumi moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6).   (Docket No. 37). First, pursuant to Rules 12(b)(1) and 12(b)(6), P.T. Sumi argues that the complaint should be dismissed because the applicable statute of limitations expired before plaintiffs added P.T. Sumi to the complaint.   Id. at pp. 1-2.   Motions to dismiss brought

pursuant to Rule 12(b)(1) are subject to a similar standard as those brought pursuant to Rule 12(b)(6) in that a court must take all of plaintiff's allegations as true and view them in the light most favorable to the plaintiff. Torres Maysonet v. Drillex, S.E., 229 F. Supp. 2d 105, 107 (D.P.R. 2002); see also Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994). In so far as the defendant is moving under Rule 12(b)(1), the parties may attach documents and exhibits and the Court may review them. Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002), as corrected (May 8, 2002).

Second, pursuant to Rule 12(b)(2), P.T. Sumi argues that dismissal is warranted because this Court lacks personal jurisdiction over it. (Docket No. 37 at p. 2.) Plaintiff bears the burden of showing that jurisdiction exists over the defendant. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). When considering a motion to dismiss pursuant to Rule 12(b)(2), a court may choose among several methods for determining whether a plaintiff has met its burden, including the "prima facie" standard, the "preponderance-of-the-evidence" standard, or the "likelihood" standard. Id. at 50-51.

When a district court considers a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the prima facie standard governs. United States v. Swiss Am. Bank,

Ltd., 274 F.3d 610, 618 (1st Cir. 2001).  The *prima facie* standard requires a plaintiff to demonstrate the existence of jurisdiction under both the forum's long-arm statute and the federal Constitution.  Id.  To do this, it must provide affirmative proof by going beyond the pleadings and by attaching supplementary filings, such as affidavits.  Id.; Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  In conducting its analysis, a court accepts supported proffers of evidence by the plaintiff.  Swiss Am. Bank, 274 F.3d at 618.  A court may also review facts put forward by the defendant if they are not contradicted.  Daynard, 290 F.3d at 51.

## III. DISCUSSION

Plaintiffs contend that P.T. Sumi is liable for, *inter alia*, manufacturing the Falken Tires that caused Rosado's car crash and his resulting death.  (Docket No. 9 at ¶¶ 10-28.)  P.T. Sumi seeks dismissal of plaintiff's claims on two grounds:  (1) statute of limitations, and (2) lack of personal jurisdiction.  (Docket No. 37.)  The Court will address each argument in turn.

### A.   Statute of Limitations

As an initial matter, when jurisdiction is based on the diversity of citizenship, federal courts will apply state substantive law.  Erie R. Co. v. Tompkins, 304 U.S. 64, 91-92 (1938); see also Hanna v. Plumer, 380 U.S. 460, 466 (1965).  The

statute of limitations is substantive law, so the law of the forum state - here, Puerto Rico - controls.  See, e.g., Alejandro-Ortiz v. P.R. Elec. Power Auth. (PREPA), 756 F.3d 23, 27 (1st Cir. 2014). In this case, plaintiffs are bringing a diversity product liability tort action pursuant to article 1802 of the Civil Code, P.R. Laws Ann. tit. 31, § 5141.[4]  The statute of limitations for article 1802 claims is one year from the time the aggrieved party has knowledge. P.R. Laws Ann. tit. 31, § 5298; Kaiser v. Armstrong World Indus., Inc., 872 F.2d 512, 515 (1st Cir. 1989).  Knowledge is defined as notice of the injury and of the person who caused it.  Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000).

P.T. Sumi maintains that the applicable one-year statute of limitations bars plaintiffs' claims because plaintiffs did not name P.T. Sumi as a defendant until the filing of its second amended complaint on August 6, 2014, which was eight days after the putative limitations period had expired.  (Docket No. 37.)  Because the statute of limitations functions differently for minors, the Court will first discuss the defense as it pertains to the minor plaintiffs, MJRC and KNRC, and then turn to its application to plaintiff Carrasquillo.

---

[4] The parties do not contest the choice of law in this matter.  See Docket Nos. 37, 45.

### 1.   MJRC and KNRC's Claims

Plaintiffs contend that MJRC and KNRC are minors and that the statute of limitations has not run against them. (Docket No. 45 at p. 3.)  The Court agrees.  In Puerto Rico, the statute of limitations clock does not begin to tick against minors until they turn twenty-one, <u>Santana-Concepcion v. Centro Medico Del Turabo, Inc.</u>, 768 F.3d 5, 11 (1st Cir. 2014); P.R. Laws Ann. tit 32, § 254(1), even if the minors are represented by a parent, <u>De Jesus v. Chardon</u>, No. 0-84-533, 1985 WL 301252, at *308 (P.R. Mar. 19, 1985).  This provision extends to causes of action inherited while still under legal age.  <u>De Jesus</u>, 1985 WL 301252, at *308.  Here, MJRC and KNRC are minors, (Docket No. 9  at ¶¶ 7, 8), so the statute of limitations clock has not yet been triggered against them.  MJRC and KNRC's own causes of action as well as the actions inherited from their father, Rosado, were thus timely brought against P.T. Sumi.

Consequently, P.T. Sumi's motion to dismiss the complaint as time-barred pursuant to Rules 12(b)(1) and 12(b)(6), in so far as it relates to minor plaintiffs MJRC and KNRC, is **DENIED**.

### 2.   Carrasquillo's Claims

P.T. Sumi additionally asserts its statute of limitations defense against the non-minor plaintiff, Carrasquillo,

for whom it argues no tolling provision applies.  Puerto Rico law provides that the statute of limitations period is one year for claims pursuant to article 1802.  P.R. Laws Ann. tit. 31, § 5298; Rodriguez-Suris v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997). The statute of limitations starts to run once the injured party knew or should have known of (1) the injury;[5] and (2) the person who caused it.  Rodriguez v. Suzuki Motor Corp., 570 F.3d 402, 406 (1st Cir. 2009); see also Torres, 219 F.3d at 18.

The parties do not dispute the date of plaintiff's notice as to the injury: July 29, 2013, the day of Rosado's fatal accident.  Instead, the parties disagree about the date of plaintiff's knowledge as to the author of the injury.

Knowledge of the author of the injury can be found when: (1) the plaintiff has actual knowledge of the defendant's involvement, or (2) with the exercise of due diligence, the plaintiff should know of the defendant's involvement.  Espada v. Lugo, 312 F.3d 1, 4 (1st Cir. 2002).  The concept of deemed knowledge is essentially parlance for the discovery rule, which stands for the proposition that "[t]he one-year [statute of

---

[5] A plaintiff acquires notice of the injury if there are "'some outward or physical signs through which the aggrieved party may become aware and realize that [s]he has suffered an injurious aftereffect.'"  Espada v. Lugo, 312 F.3d 1, 3 (1st Cir. 2002) (quoting Kaiser, 872 F.2d at 516).

limitations] does not begin to run until the plaintiff possesses, or with due diligence would possess, information sufficient to permit suit." Alejandro-Ortiz, 756 F.3d at 27.  The plaintiff bears the burden of establishing that she lacked the necessary or imputed knowledge before filing her claim.  Espada, 312 F.3d at 4. The standard for evaluating what a reasonable plaintiff should have known is an objective one.  Donahue v. United States, 634 F.3d 615, 624 (1st Cir. 2011).

        P.T. Sumi first contends that Carrasquillo's claims against it are time-barred because Carrasquillo had actual knowledge of P.T. Sumi's involvement on the day of the accident, July 29, 2013, yet she only made P.T. Sumi a party to the suit in the second amended complaint on August 6, 2014, eight days past the expiration of the one-year statute of limitations.  (Docket No. 37 at pp. 9-10.)

        In opposition, Carrasquillo argues that it was not until after August 6, 2013, that she acquired actual knowledge of the likely identity of P.T. Sumi because, among other reasons, Rosado's Toyota Camry was impounded until after August 6, 2013, and thus she was unable to make an investigation into the tire numbers prior to that day.  (Docket No. 45 pp. 5-7.)  By filing her second amended complaint on August 6, 2014, within the year from August 6, 2013, she argues that her causes of action against P.T. Sumi are

not time-barred.  Id. at p. 7.  At this stage, the Court takes as
true her allegations as to when she gained actual knowledge.  See
Estate of Alicano Ayala v. Philip Morris, Inc., 263 F. Supp. 2d
311, 316 (D.P.R. 2003).

          P.T. Sumi secondly contends that Carrasquillo, with
the exercise of due diligence, should or could have known of P.T.
Sumi's involvement on the day of the accident, July 29, 2013.
(Docket No. 37 at p. 9.)  P.T. Sumi argues that Carrasquillo could
have acted with due diligence by conducting an internet search of
the tire Identification Number on the National Highway Traffic
Safety Administration ("NHTSA") website.  Id. at pp. 9-10.  P.T.
Sumi asserts that had she conducted the internet search, she would
have identified P.T. Sumi as of July 29, 2013, the day of the

accident, or at least have been timely (earlier than eight days
after the accident).[6]  Id.

In opposition, Carrasquillo argues that she could
not have gained knowledge of P.T. Sumi's involvement sooner than
eight days after the death of her husband by the exercise of due
diligence.  (Docket No 45 at p. 7.)  To support her argument,
Carrasquillo contends that she lacked the knowledge required to
decipher the tire code and the online instructions do not clearly
explain that the "DOT code contains a code that identifies the
manufacturer."  Id. at p. 6.  Carrasquillo additionally argues that
she could not have found P.T. Sumi earlier because any
investigation as to the DOT numbers contained on the Falken Tire
had to take place well after August 6, 2013, once Rosado's Toyota
Camry was released by the police.  Id. at pp. 6-7.  While she did

---

[6] The parties additionally quibble over the significance of an
email that was sent to plaintiff's counsel by defendant's counsel
on February 5, 2014, naming P.T. Sumi as the manufacturer of the
Falken tires.  (See Docket Nos. 48, 51.)  P.T. Sumi argues that
Carrasquillo's attorneys were made aware of P.T. Sumi's involvement
as manufacturer of the Falken brand tires through the email, but
failed to include P.T. Sumi in their original complaint on June 25,
2014.  (Docket No. 48 at p. 10.)  This email, however, is not
helpful to the defendant's position.  If anything, it shows that
plaintiffs were diligently trying to identify the person who caused
the accident.  Moreover, if February 5, 2014, is taken as the date
of plaintiffs knowledge of P.T. Sumi's identity, as the defendant
argues, then Carrasquillo's causes of action are not time-barred
because the second amended complaint was filed on August 6, 2014,
(Docket No. 9), which would be within one year of the February 5,
2014, email.

have the purchase receipt of the Falken Tires from the Pep Boys store, Carrasquillo contends that this receipt did not make any mention of P.T. Sumi. <u>Id</u>.[7]

The Court finds that the record indicates that Carrasquillo did not sit on her claims, but that she instead acted with the amount of diligence expected of a reasonable person. She filed her claim within a year and eight days of her husband's deathly accident. <u>Contra</u> <u>Estate of Castro Martinez v. Philip Morris Inc.</u>, Civ. No. 02-2171 (HL), 2004 WL 870677, at *3 (D.P.R. Mar. 30, 2004) (holding that a wait of more than four years to bring suit for smoking related health conditions was unreasonable because due diligence would have informed plaintiffs of numerous suits by state governments years prior to filing suit).  Whether or not Carrasquillo's lack of instruction as to the tire code establishes her inability to gain knowledge with due diligence, the fact remains that Rosado's car was not released from police custody until after August 6, 2013.  For at least eight days after her husband's accident, Carrasquillo did not have the tires to look up their code numbers, and thus due diligence on her part would not

---

[7] To support her argument, Carrasquillo attaches to her opposition to the motion to dismiss multiple documents, including Exhibit 1, the Unsworn Statement Under Penalty of Perjury of Milagros Carrasquillo, and Exhibit 3, the purchase receipt of the Falken Tire bought by Rosado at the Rio Grande Pep Boys' store that contains no indication of P.T. Sumi.  (Docket No. 45).

have allowed her to gain knowledge of P.T. Sumi's identity during
this time. See Attallah v. United States, 955 F.2d 776, 780 (1st
Cir. 1992) (finding a delayed accrual warranted because the
appellants did not know, nor in the exercise of reasonable
diligence could have known, of the appellee-customs agents'
criminal involvement until the time of their indictment).
Furthermore, the receipt from Pep Boys, which made no indication of
P.T. Sumi, would not have allowed Carrasquillo to learn of P.T.
Sumi sooner. Contra Alejandro-Ortiz, 756 F.3d at 29 (discussing
plaintiff's failure to exercise due diligence when "a mere glance
at her electricity bill would have allowed [her] . . . to discover
that the owner of the power line was PREPA."). Because the date of
Carrasquillo's earliest knowledge of P.T. Sumi (August 7, 2013) is
one year before the date she named P.T. Sumi in the complaint
(August 6, 2014), Carrasquillo's claims are not barred by
limitations as a matter of law.

Consequently, P.T. Sumi's motion to dismiss the
complaint as time-barred pursuant to Rules 12(b)(1) and 12(b)(6),
in so far as it relates to Carrasquillo, is **DENIED.**

**B.    Personal Jurisdiction**

P.T. Sumi additionally argues that it lacks the
sufficient minimum contacts with Puerto Rico to allow this Court to
exercise personal jurisdiction over it. (Docket No. 37.) P.T.

Sumi therefore contends that dismissal of plaintiff's second amended complaint against it is warranted pursuant to Federal Rule of Civil Procedure 12(b)(2).  Id.

Personal jurisdiction refers to a court's power to exercise authority over a person or entity under both the forum's long-arm statute and the Due Process Clause of the Fourteenth Amendment.  Negron-Torres v. Verizon Communs., Inc., 478 F.3d 19, 24 (1st Cir. 2007); see also Mapfre Puerto Rico v. Guadalupe-Delgado, 608 F. Supp. 2d 255, 258 (D.P.R. 2009) (Besosa, J.).  It is the plaintiff's burden to demonstrate the existence of every fact required to satisfy both the statutory and constitutional requirements.  Swiss Am. Bank, 274 F.3d at 618.  Here, because Puerto Rico's long-arm statute extends jurisdiction to the maximum limits imposed by the Constitution, the due process analysis is determinative.  Negron-Torres, 478 F.3d at 24.  The Court will therefore proceed with the constitutional inquiry.  See id.

Personal jurisdiction may be either "general" or "specific."  Daynard, 290 F.3d at 51.  In determining whether general or specific jurisdiction exists, a court should look to the existence of "minimum contacts" between the defendant and the forum that renders such jurisdiction consistent with "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v.

Civil No. 14-1505 (FAB)                                          15

Washington, 326 U.S. 310, 316 (1945).  The Court will consider both

general and specific jurisdiction.

       1.  **General Jurisdiction**

        General jurisdiction may be found when a defendant

has "continuous and systematic activity" in the forum state, even

if the activity is unrelated to the claims at hand, Daynard, 290

F.3d at 51, so long as the exercise of jurisdiction would be

reasonable, Swiss Am. Bank, 274 F.3d at 619.  This standard is

considerably stringent because it allows a defendant to be brought

into court in the forum state to "answer for any of its activities

anywhere in the world."  Canatelo, LLC v. NUVICO, Inc., Civ. No.

12-1430 (JAG), 2013 WL 4546017, at *2 (D.P.R. Aug. 27, 2013)

(internal quotation marks and citation omitted).

        P.T. Sumi contends that the Court lacks general

personal jurisdiction over it.  (Docket No. 37 at p. 14.)  The

Court agrees.  The Supreme Court has stated that for a corporation,

the paradigmatic forum for the exercise of general jurisdiction is

the place where the corporation is "fairly regarded as at home."

Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846,

2854 (2011).  It is clear that P.T. Sumi is not "at home" in Puerto

Rico, as it is uncontested by plaintiffs that P.T. Sumi is

organized under the laws of Indonesia with its principal place of

business and "nerve center" located in Indonesia. (Docket No. 9 at

¶ 16.)  Furthermore, plaintiffs have failed to allege continuous
and systematic activity in Puerto Rico that would nonetheless allow
this Court to exercise general jurisdiction over P.T. Sumi.  See
Docket Nos. 9, 45.  Although plaintiffs allege a dealership
arrangement between P.T. Sumi and FTC (a California corporation)
and FTC and Pep Boys (a nationwide retailer), they fail to provide
something more that establishes continuous and systematic activity
with Puerto Rico, such as contract negotiations, business
transactions, or service visits.  See Mapfre, 608 F. Supp. 2d
at 261 (finding no general jurisdiction where plaintiff did not
establish that defendant-manufacturer "purposefully sought a dealer
in Puerto Rico to serve the market or that negotiations existed
that lead to the establishment of such a dealer").  As a result,
plaintiffs have not made the *prima facie* showing necessary for the
exercise of general personal jurisdiction.

## 2. Specific Jurisdiction

In the absence of general jurisdiction, a court may
still exercise specific jurisdiction over a person.  Swiss Am.
Bank, 274 F.3d at 623.  Specific jurisdiction may be exercised over
an out-of-state defendant where the claim "arises directly out of,
or relates to, the defendant's forum-based contacts."  United
Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960
F.2d 1080, 1088-89 (1st Cir. 1992).  To determine whether specific

jurisdiction exists, the First Circuit Court of Appeals considers three factors: relatedness, purposeful availment, and reasonableness. Daynard, 290 F.3d at 60. The Court will consider each prong.

### i.   Relatedness

To satisfy the relatedness prong, the claim underlying the cause of action must directly relate to - or arise out of - a defendant's forum state activities. Daynard, 290 F.3d at 60; Ticketmaster, 26 F.3d at 206 ("[Relatedness] focuses on the nexus between the defendant's contacts and the plaintiff's cause of action."). That is, the defendant's in-state activities must form a material element of proof in the plaintiff's case. Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005).

Plaintiffs claim that the relatedness test is met because Rosado purchased the defective Falken Tire at the Pep Boys store in Rio Grande, Puerto Rico, and the Toyota Camry that crashed, causing Rosado to die on July 29, 2013, was outfitted with those same Falken Tires. (Docket No. 45 at pp. 16, 21.) Plaintiffs highlight that P.T. Sumi manufactured the tires that were sold to FTC - an entity based in California - and that FTC sells to Pep Boys, which markets and sells across the United States and Puerto Rico. Id. at p. 21. Plaintiffs fail to present evidence, however, that shows that P.T. Sumi participated in the

sale of the tire in Puerto Rico, or that Pep Boys in Rio Grande
contacted P.T. Sumi and that P.T. Sumi referred them to FTC, the
distributor.  See Mapfre, 608 F. Supp. 2d at 262 (finding that the
relatedness prong was not met where plaintiff failed to present
evidence or allege that defendant participated in the sale of a
good in Puerto Rico).  The Court thus finds the relatedness prong
is not met.

   ii.  **Purposeful Availment**

          To satisfy the purposeful availment prong, the
defendant's contacts with Puerto Rico must constitute purposeful
availment of the benefits and protections afforded by Puerto Rico's
laws.  See Swiss Am. Bank, 274 F.3d at 620.  The purposeful
availment prong focuses on the defendant's intentionality and is
only satisfied when the defendant "purposefully and voluntarily
directs his activities toward the forum so that he should expect,
by virtue of the benefit he receives, to be subject to the court's
jurisdiction based on these contacts."  Id. at 623-24 (internal
citations omitted).  "Voluntary" means that the defendant's
contacts with the forum state must not be based on the unilateral
actions of another party or a third person, Nowak v. Tak How Invs.,
Ltd., 94 F.3d 708, 716 (1st Cir. 1996) (citing Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 475 (1985)), but must instead result from
actions by the defendant himself, Phillips v. Prairie Eye Ctr., 530

F.3d 22, 28 (1st Cir. 2008) (internal citations omitted).  To establish purposefulness, a court may consider "prior negotiations, contemplated future consequences, the terms of the contract and the parties' actual course of dealing."  Mapfre, 608 F. Supp. 2d at 262 (citing Burger King, 471 U.S. at 475).

The question here is:  can an entity based in Indonesia (P.T. Sumi), who manufactured a tire that they sold to a corporation in California (FTC), who sold to a nationwide retail and service chain (Pep Boys), who ultimately sold the specific tire in its Rio Grande, Puerto Rico shop, be said to have purposefully availed itself of the privilege of conducting activities in Puerto Rico?

To help answer this question, plaintiffs rely upon the stream of commerce theory.  See Goodyear, 131 S. Ct. at 2849.  Under stream of commerce theory, a court may bring a manufacturer into its jurisdiction if the manufacturer's allegedly defective goods are the source of the injury and the sale of the product was not simply an isolated occurrence, but rather related to the efforts of that manufacturer to target the particular forum. J. McIntyre Mach., Ltd., v. Nicastro, 131 S. Ct. 2780, 2788 (2011); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). As a general rule, however, the stream of commerce theory may not be used to assert jurisdiction when a defendant "simply

manufactures products that eventually arrive in the forum."
Canatelo, LLC v. AXIS Commc'ns AB, 953 F. Supp. 2d 329, 336-37
(D.P.R. 2013) (citing J. McIntyre, 131 S. Ct. at 2792 (Breyer, J.,
concurring)).  Furthermore, simply "doing business with a company
that does business in [the forum] is not the same as doing business
in [the forum]."  Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,
148 F.3d 1355, 1361 (Fed. Cir. 1998).

Plaintiff's claim of jurisdiction centers on
the fact that P.T. Sumi, a company with its principal place of
business and "nerve center" in Indonesia, as a subsidiary of the
Japanese corporation Sumitomo, manufactures the Falken Tire.  P.T.
Sumi partners with FTC - a corporation organized under the laws of
the state of California, and a corporation advertised as Sumitomo's
sale division in North America - to sell the Falken Tire directly
to FTC.  FTC sells the Falken Tire to Pep Boys, a nationwide retail
and service chain with over 800 stores across the United States.
Pep Boys has a store in Rio Grande, Puerto Rico, which sold the
allegedly faulty Falken Tire to Rosado.  (Docket No. 45 at
pp. 17-19.)  Based on this attenuated chain, plaintiffs contend
that P.T. Sumi "cannot willfully ignore" the actions of its
distributors.  Id. at 20.

But this distribution chain does not show that
P.T. Sumi directly targeted Puerto Rico.  The fact that P.T. Sumi

sells to FTC, who in turn distributes to Pep Boys nationwide, including stores in Puerto Rico, does not show that P.T. Sumi purposefully availed itself of Puerto Rico's laws because there is no evidence that P.T. Sumi's contacts with Puerto Rico are voluntary.  This distribution chain merely indicates incidental contacts based on the actions of third parties, which is not enough. Nowak, 94 F.3d at 716.  Furthermore, plaintiffs present no facts demonstrating that P.T. Sumi purposefully directed its activities toward Puerto Rico.  Plaintiffs did not present evidence to show, for example, any negotiation, or contract between P.T. Sumi and FTC, or Pep Boys, that specified sales in Puerto Rico. Mapfre, 608 F. Supp. 2d at 262.  From the tenuous nature of the distribution chain, it appears instead that P.T. Sumi simply manufactured a Falken Tire that eventually arrived for sale in Puerto Rico.  AXIS Commc'ns, 953 F. Supp. 2d at 336-37.

        Thus, because the evidence presented does not show that P.T. Sumi intended to direct its activities toward Puerto Rico voluntarily and purposefully  such that it should expect to be subject to Puerto Rico's jurisdiction, the Court cannot conclude the purposeful availment prong has been met.

        **iii. Reasonableness**

        To satisfy the reasonableness prong, the court should assess the fairness of subjecting a nonresident defendant to

the court's authority.  See Ticketmaster, 26 F.3d at 209.  The
Supreme Court has identified five factors to consider, known
collectively as the "gestalt factors."  Id.  They are:  (1) the
defendant's burden of appearance; (2) the forum state's
adjudicatory interest; (3) the plaintiff's interest in obtaining
convenient relief; (4) the judicial system's interest in obtaining
effective resolution of the controversy; and (5) the common
interests of all sovereigns in promoting substantive social
policies.  Id. (citing Burger King, 471 U.S. at 477).  In assessing
the reasonableness prong, the First Circuit Court of Appeals has
adopted a sliding scale approach: the weaker the plaintiff's
showing on the relatedness and purposeful availment prong, the less
the defendant must show in terms of unreasonableness.  Id.  Given
that the plaintiff's showing of relatedness and purposeful
availment was not met, the defendant's hurdle to show
unreasonableness to defeat jurisdiction is significantly lower.
Id.

      The Court finds that the "gestalt factors" do
not cut towards exercising personal jurisdiction because, first, it
would be a burden for P.T. Sumi to be brought into a forum of which
it has not availed itself.  Second, although this forum is
interested in exercising jurisdiction over one who causes tortious
injuries within its borders, Ticketmaster, 26 F.3d at 201, the

interest is lessened by doubts as to whether P.T. Sumi purposefully availed itself of the forum.  Third, plaintiffs clearly have an interest in convenient relief, but this cannot tip the scales in their favor against the notions of fair play and substantial justice that prevent P.T. Sumi from having to defend itself in a place it did not purposefully target.  Fourth, the judicial system's interest in obtaining the most effective resolution of the controversy does not appear to cut either way because plaintiffs have additional claims against other manufacturer and distributor defendants who may have minimum contacts with Puerto Rico. Finally, "the most prominent policy implicated is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir. 1995).  But again, convenience does not carry enough weight to allow the Court to haul P.T. Sumi into Puerto Rico.  Thus, the Court finds that the reasonableness prong does not allow for the Court's exercise of jurisdiction.

For the above reasons, the Court finds that the relatedness, purposeful availment, and reasonableness prongs are not met and, therefore, specific personal jurisdiction over P.T. Sumi is lacking.

### 3.   Jurisdictional Discovery

As a last-ditch effort, plaintiffs ask for permission to conduct jurisdictional discovery because they have "made a colorable case for the existence of *in personam* jurisdiction." (Docket No. 45 at p. 21.) As a general matter, even when a plaintiff has made a "colorable claim" for personal jurisdiction, the district court has broad discretion to decide whether to grant its request for jurisdictional discovery. Swiss Am. Bank, 274 F.3d at 626. A plaintiff's failure to allege specific contacts that would be relevant to establish personal jurisdiction may prove fatal to that party's jurisdictional discovery request. Id. at 626-27.

As discussed above, plaintiffs have failed to make a colorable claim for personal jurisdiction over P.T. Sumi. Accordingly, the Court, in its discretion, denies the jurisdictional discovery request. See Mapfre, 608 F. Supp. 2d at 263 (holding it "prudent" and within the court's discretion to deny the jurisdictional discovery request where the plaintiff failed to show personal jurisdiction).

Consequently, P.T. Sumi's motion to dismiss the second amended complaint pursuant to Rule 12(b)(2) is **GRANTED.**

Civil No. 14-1505 (FAB)                                                    25

**IV.   CONCLUSION**

For the reasons explained above, the Court finds that although the claims against P.T. Sumi are not time-barred, the Court lacks personal jurisdiction over P.T. Sumi.  Accordingly, the Court **GRANTS** P.T. Sumi's motion to dismiss, (Docket No. 37).  Plaintiff's claims against P.T. Sumi (Docket No. 9), are **DISMISSED WITH PREJUDICE.**

There being no just reason for delay, partial judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 17, 2015.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE